# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01317-SCT

*PAULA HATHORN*

*v.*

*LOUISVILLE UTILITIES COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/12/2016 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| TRIAL COURT ATTORNEYS: | REBECCA B. COWAN |
| | BRADFORD KEITH MORRIS |
| | BENJAMIN LYLE ROBINSON |
| | WALKER REECE GIBSON |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRADFORD KEITH MORRIS |
| ATTORNEYS FOR APPELLEE: | JOSEPH WALTER GILL |
| | REBECCA B. COWAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 09/28/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Paula Hathorn appeals a judgment entered by the Winston County Circuit Court granting summary judgment in favor of the Louisville Utilities Commission (Commission). Hathorn sued the Commission along with the City of Louisville and the O'Reilly Auto Parts store located Louisville, Mississippi, for injuries she claimed resulted from a fall that occurred after she stepped into a sunken utility box set into a sidewalk in front of O'Reilly's Auto Parts.  Hathorn dismissed O'Reilly Auto Parts and the City from the suit after entering

into a settlement agreement with each separately. The Commission thereafter moved for summary judgment, which the Winston County Circuit Court granted based on the court's findings that (1) the Commission is a subsidiary of the City, and according to the settlement agreement, Hathorn had released all claims against the City and its subsidiaries; (2) the Commission is immune from liability in this instance under the Mississippi Tort Claims Act (MTCA) because it did not have a ministerial duty to maintain the water meter at a level even with the ground; and (3) Hathorn cannot maintain a premises liability claim against the Commission because the City owns the Commission's assets including its water meter boxes.

¶2. Having reviewed the record de novo, we agree with the trial court that Hathorn released her claim against the Commission when she entered into a settlement agreement with the City. Therefore, we affirm the trial court's grant of summary judgment in favor of the Commission. This issue being dispositive, we limit our decision in this case to this assignment of error.

## FACTS AND PROCEDURAL HISTORY

¶3. Hathorn claimed that in August 2014, she was walking on the sidewalk along South Church Avenue in Louisville, Mississippi. As she approached the portion of sidewalk in front of O'Reilly's Auto Parts, Hathorn noticed grass clippings along the edge of the sidewalk and scattered across its surface. While walking in front of O'Reilly's, Hathorn's foot unexpectedly sank into a hole a few inches deep in the sidewalk, causing Hathorn to twist her ankle, lose her balance, and fall forward, injuring herself further. According to

2

Hathorn, an uncovered utility box set within the sidewalk caused her fall, and she did not see it because of the grass clippings covering the sidewalk.

¶4.    Hathorn sued O'Reilly Auto Parts, the City, and the Commission in March 2015.  In December 2015, Hathorn executed a settlement agreement with the City and a separate settlement agreement with O'Reilly Auto Parts.  An agreed order was entered on December 30, 2015, dismissing O'Reilly Auto Parts as a defendant.  Another agreed order was entered on January 4, 2016, dismissing the City.

¶5.    The Commission remained the only defendant.  Litigation continued between the two parties over the next seven months, which included depositions, additional discovery, and ongoing correspondence between counsel for Hathorn and counsel for the Commission.

¶6.    Hathorn took the deposition of Wilson Webb, who has served as the General Manager of the Commission since 2004.  Webb testified that the Commission is a division of the City.  The City's Board of Alderman appoints one board member per year and reappoints the board members every five years.  The Board of Alderman can fire or remove the any commissioner.

¶7.    Webb said that, prior to Hathorn's incident, there had been no complaints by anyone about a lid being off a meter box or about the depth or the offset of a water meter box in any sidewalk in the city.  He said as a matter of course, every water meter box installed in a sidewalk in the city is installed flush or level with the surface of the sidewalk.  And this particular water meter box was installed flush during the construction of the O'Reilly store and it appeared to remain flush even after O'Reilly resurfaced the sidewalk with concrete.

¶8.    Webb acknowledged that at some point in time, this particular water meter box had gotten depressed by something running over it, e.g., a riding lawnmower or a vehicle. Webb did not know when that might have occurred.

¶9.    Webb said that after he learned about Hathorn's claim, he had an assistant put bricks in the area over the meter box. A photograph of the water meter box was taken and exhibited at Webb's deposition. It depicts the site where the water meter box is located, and it shows a measured difference of approximately two and five-eighths inches between the surface of the sidewalk and the top of the meter box.

¶10.    Webb also testified that the Commission did not have any prior notice of the depressed meter box because the Commission's employees would have only driven by and read the water meter electronically sometime during the month prior to Hathorn's fall. He said the Commission uses an "Orion meter reading system[,]" which allows them to read water meters electronically as they drive by the water meter. According to Webb, if an employee had seen that the meter box had sunken into the sidewalk, it would have been repaired.

¶11.    He also testified that had O'Reilly, as with any customer, reported a problem with the water meter box, someone with the Commission would have gone out and checked it.

¶12.    The record shows that the Commission received a copy of the settlement agreement between the City and Hathorn in May 2016, via a production request from the Commission. According to the agreement, Hathorn agreed to:

> fully and finally release, acquit and forever discharge THE CITY OF LOUISVILLE, MISSISSIPPI, MISSISSIPPI MUNICIPAL LIABILITY PLAN AND MISSISSIPPI MUNICIPAL SERVICE COMPANY and their successors, agents, attorneys, insurers, subsidiaries, sister or parent companies,

4

assigns, employees, representatives, stockholders, and any and all other persons, firms and corporations associated, affiliated, and/or in privity of interest therewith (hereinafter collectively "RELEASEES") from any and all actions, causes of action, claims, demands, damages of any nature, costs, expenses, attorneys' fees and expenses, and all other liabilities whatsoever of every kind and nature, both at law and in equity, whether known or unknown, accrued or to accrue, including, but expressly not limited to, any and all claims for, past and future, bodily injury, medical expenses, disfigurement, disability, property damage, loss of income, loss of wage-earning capacity, loss of consortium, damages of any type, reckless disregard, punitive damages, mental and emotional distress, and pain and suffering and any and all claims allowable under Miss. Code Ann. § 11-46-1, et seq. (as amended), which Releasor may now or hereafter have on account of or in any way arising out of or being connected with an alleged trip and fall incident on or about August 5, 2014 in Winston County, Mississippi. As a result of the aforesaid alleged incident, the undersigned Releasor has made certain claims against Releasees, and any and all said claims are now hereby fully compromised and settled by this instrument.

10. For the same consideration aforesaid, the undersigned Releasor does hereby release, acquit and forever discharge Releasees, from any and all claims of every kind made in that certain action styled: Paula Hathorn v. Louisville Utilities; City of Louisville, Mississippi; O'Reilly Automotive Stores, Inc. And O'Reilly Automotive Stores, Inc. [sic]; in the Circuit Court of Winston County Mississippi; Cause No. 2015-033 CVL, and will enter a dismissal of Releasees herewith.

11. This Release contains the entire agreement between the parties hereto, and the terms of this Release are contractual and not a mere recital. Since the purpose of this Release is to end this matter forever just as if the aforesaid accident never occurred and the aforesaid parties never existed, should it develop that there are any mistakes or any omissions in this instrument which would cause the release of the parties herein released to be defective or less than complete, then the undersigned shall sign any and all documents and do any and all things necessary to effectuate a full, final and complete release of said parties.

12. The undersigned further states that she has carefully read the foregoing instrument; that she knows the contents hereof; and that before signing and sealing this Release, the contents and meaning have been fully explained to her by her attorney; that she understands and agrees to each and every term and condition contained herein; that she is of full age and legally competent to

5

execute this Release; that she signed this Release with a full understanding of her rights and the consequences of entering into and signing this Release; that her signature hereof evidences the fact that the Release was voluntarily entered into with full knowledge and understanding of the consequences thereof . . . .

¶13. In June 2016, the Commission filed a motion for summary judgment claiming (1) Hathorn had released the Commission when she had entered a release with the City; (2) the Commission enjoyed discretionary function immunity from Hathorn's claims; and (3) Hathorn's claims failed on the merits because the water meter box did not constitute an unreasonably dangerous condition and the Commission had no actual or constructive knowledge of the condition of the box prior to Hathorn's alleged trip-and-fall.

¶14. The trial court granted the Commission's request for summary judgment, finding in favor of the Commission on each ground asserted.

**Whether the trial court erred in ruling that Hathorn released all claims against the Commission when she executed the release with the City.**

¶15. The trial court found that Hathorn had released her claims against the Commission when she had executed a "Full, Final, and Absolute Release," with the City that discharged all claims against the City and its "successors, agents, attorneys, insurers, subsidiaries . . . ." The trial court relied on *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 392 (Miss. 2014), which holds that contract law principles are to be applied to settlement agreements.

¶16. In *Nix*, this Court reiterated that the validity of such agreements requires first examining the four corners of the document to ascertain the intent of the parties. *Id*. When the terms and conditions contained within the agreement are clear and unambiguous, they are conclusive of that intent. *Id*. "Only if the settlement agreement is vague and ambiguous, and

6

the intent of the parties thus unclear, does the [c]ourt [then] examine extrinsic evidence[]" to determine the actual intent of the parties. *Id*.

¶17. The trial court found that Hathorn did not argue that the settlement agreement was invalid or that the terms and conditions contained therein were ambiguous. Thus, if Hathorn agreed to release subsidiaries of the City, and the Commission is a subsidiary of the City, then Hathorn, by the terms of the agreement, released the Commission, according to the trial court. Therefore, the only question that remained for the trial court to determine was whether the Commission is a subsidiary of the City.

¶18. The trial court found that pursuant to Mississippi Code Section 21-27-13,[1] the Commission is a subsidiary of the City. Therefore, Hathorn released her claims against the Commission when she executed the settlement agreement with the City.

---

[1] Section 21-27-13 states, in part:

The governing authorities of any municipality which now owns and operates, or hereafter shall own and operate, any system or systems shall have the power and authority to create a commission to control, manage and operate such systems, or any one or more of them, which said commission shall consist of not less than three (3) nor more than five (5) commissioners, to be elected by the governing authorities of such municipality. In any municipality operating under the council-manager plan of government, such commissioners shall be selected by, and shall be under the control of, the mayor and councilmen of the municipality, and not the city or town manager. Such commissioners shall have the power, authority and duty to manage and control said system or systems and the supply of the facilities and services thereof, both within and without the limits of the municipality. Such commissioners shall be qualified electors of the municipality and shall not hold any other municipal office for honor or profit. Such commissioners shall receive such compensation as may be specified and provided by the governing authorities of said municipality . . . .

Miss. Code Ann. § 21-27-13 (Rev. 2015).

7

¶19. Hathorn argues this was error. She claims that it was never her intent to release the Commission when she executed a release for the City. She contends: a) there was no consideration and a meeting of the minds between her and the Commission; b) the Commission lacks privity of contract to the release against the City, and the Commission is not entitled to third-party beneficiary status under the release; c) contrary to the trial court's finding, the terms of the release are ambiguous as to Hathorn and the Commission; d) the terms of the release are unconscionable as to Hathorn and the Commission; e) even if the terms of the release are not ambiguous, the Commission had reason to know it was not intended to be released by the settlement agreement, so there was a unilateral mistake in the release as to her and the Commission; f) release of the Commission is not enforceable due to fraud and/or inequitable conduct in the inducement of the agreement, which necessitates contract reformation; and g) the Commission is a separate legal entity for purposes of notice and liability.

¶20. We find no merit in these points of contention. Mississippi "follows the majority rule that for a release of one joint tort-feasor to release other joint tort-feasors, the satisfaction received by the injured party must be intended and must be accepted as full and total compensation for damages sustained." *Smith v. Falke*, 474 So. 2d 1044, 1045 (Miss. 1985). Generally, "a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." *Id*. at 1045-46 (quoting Prosser, Law of Torts, § 301 (4th ed. 1971)).

8

¶21.    In *Smith*, a plaintiff driver sued the drivers of two vehicles when her car was struck from behind by one of the vehicles after that vehicle was struck from behind by the second vehicle. *Id*. at 1045.  After filing suit, the plaintiff agreed to release the second driver upon payment from that driver's insurance carrier in the maximum amount of his liability coverage. *Id*.  The release contained language releasing "all others whatsoever" from liability in the accident. *Id*. at 1044.  Afterward, the first driver filed a motion to dismiss the plaintiff's lawsuit against him, claiming that, based on its language, the release operated as a bar to recovery from him as well. *Id*. at 1045.  The trial court agreed, finding the language and terms of the release to be clear and unambiguous, and not subject to parol evidence. *Id*.

¶22.    The *Smith* Court reversed the trial court's decision, holding that the court had erred in failing to consider "undisputed parol facts entitled to be considered by the [c]ourt." *Smith* found that the first driver constituted a stranger to the contract, and "the parol evidence rule is operative as to parties to the document and not a stranger to the release."  *Id*. at 1047 (citing *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 347, 91 S. Ct. 795, 810, 28 L. Ed. 2d 77, 97 n.12 (1971)).

¶23.    The *Smith* Court found that testimony from the plaintiff, her attorney, and the insurance adjuster indicated an intent to release the second driver only. *Id*.  This intent was further evidenced, according to the  *Smith* Court, by the existing lawsuit against the first driver. *Id*.  Based on these findings, the *Smith* Court reversed the trial court's decision to dismiss the suit and remanded the case for a jury trial on the merits of the negligence claim. *Id*.

¶24.  ***Smith***, however, is distinguishable from the case here.  The trial court found the term "subsidiaries" clear and unambiguous; therefore, the intent of the parties lies within the four corners of the settlement agreement.  The court also found that Hathorn, represented by counsel, knew when she filed her complaint in the matter, and even before then, that Louisville Utilities was a municipal commission.  Her complaint reads in reference to the Commission:  "At all times mentioned herein, Defendant, Louisiville Utilities, was a municipal commission and the owner and manager of water and electric utility systems in the City of Louisville . . . ."

¶25.  Further, before filing her complaint, Hathorn sent notice to both the City and the Commission under the MTCA, pursuant to Mississippi Code Section 11-46-1 to 11-46-23.  And in her claim notice to the City, Hathorn claimed the City is liable due to the negligence of its employees while in the course and scope of their employment by not making sure "the sidewalk, and utility box set within it, were installed properly and maintained in a condition safe for public use."

¶26.  The record also shows that in her claim notice to the Commission, mailed the same day as the notice to the City, Hathorn claimed the Commission is liable for negligence of its employees "by not making sure that the utility box set within the sidewalk was installed properly and maintained in a condition safe for public use."

¶27.  Also, as the trial court found, in Hathorn's brief in opposition to the Commission's motion for summary judgment, Hathorn stated: "The City of Louisville, after all, has a total of nine such subsidiary entities, eight of which had no contact with this litigation."  The trial

court found that this constituted an admission by Hathorn that the Commission is a subsidiary of the City.

¶28. Based on our de novo review of the record, we agree with the trial court that Hathorn released the Commission when she executed the settlement agreement with the City. Therefore, we find the trial court correctly found, as a matter of law, Hathorn released her claims against the Commission when she executed the settlement agreement with the City, based on the agreement's clear and unambiguous terms.

## CONCLUSION

¶29. For these reasons, we affirm the trial court's grant of summary judgment in favor of the Commission.

¶30. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.**